UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANIE FORD-WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | )    No. 4:19 CV 2392 DDN ) |
| ANDREW M. SAUL, Commissioner of Social Security. | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Jeanie Ford-Williams for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

On September 2, 2016, plaintiff applied for disability insurance benefits and supplemental security income under the Act.[1] (Tr. 13.) In both applications, plaintiff claimed a disability beginning May 15, 2015. (*Id.*) Plaintiff's applications were denied initially. (*Id.*) After a hearing before an administrative law judge ("ALJ") on May 23, 2018 (Tr. 97-121), the ALJ found her not disabled. (*Id.*) The Appeals Council denied plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner subject to judicial review.

---

[1] On December 11, 2013, plaintiff applied for disability insurance benefits and supplemental security income. (Tr. 125.) After a hearing, an Administrative Law Judge determined on May 4, 2015, that plaintiff was not disabled. (*Id*. at 135.)

## MEDICAL HISTORY

The Court adopts the parties' statements of uncontroverted material facts (Docs. 9, 14.) These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court discusses specific facts as they are relevant to the parties' arguments.

## DECISION OF THE ALJ

On August 10, 2018, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 23.) At Step One, the ALJ found that plaintiff had not performed substantial gainful activity since May 15, 2015, her alleged onset date. (Tr. 15.) At Step Two, the ALJ found that plaintiff had the following severe impairments: migraines, depressive disorder not otherwise specified, borderline intellectual functioning, generalized anxiety disorder, and major depressive disorder. (*Id.*) At Step Three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed presumptively disabling impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526. (Tr. 16.)

At Step Four, the ALJ found that plaintiff was unable to perform any of her past relevant work. (Tr. 21.) Ultimately, the ALJ found that plaintiff's impairments would not preclude her from performing other work that exists in significant numbers in the national economy, including laundry laborer, linen room attendant, and packager agricultural produce. (Tr. 22.)

## GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's final decision is to determine whether the Commissioner's findings comply with the applicable law and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* (quotation marks and citation omitted). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Dixon v. Barnhart*, (8th Cir. 2003). If substantial evidence supports the decision, the Commissioner may not be reversed merely because substantial evidence exists in the record that would support a contrary outcome or

because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits because disabled, a claimant must prove she is unable to perform any substantial gainful activity in the national economy due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A); *Pate-Fires*, 564 F.3d. at 942. A five-step process is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pate-Fires*, 564 F.3d at 942.

## DISCUSSION

### Residual Functional Capacity

Plaintiff argues that the case should be reversed and remanded because: (1) the ALJ's Residual Functional Capacity ("RFC') determination differed from the medical evidence without sufficient explanation and was not based on substantial evidence; and (2) the ALJ did not include all the credible impairments, limitations, and restrictions in the hypothetical questions posed to the vocational expert. (Tr.14.)

RFC is the most a claimant can do despite her mental and physical limitations, that is, the degree in which the plaintiff's symptoms affect her ability to work. 20 C.F.R. § 404.1545(a).

### A. Treatment Record

The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of her limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). When evaluating opinion evidence for claims filed before March 17, 2017, the ALJ must consider the medical opinions together with other relevant evidence in accordance with the factors set forth in 20 C.F.R. § 404.1527. *See* 20 C.F.R. § 404.1520b. A treating source's opinion must be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005). Here, to determine the RFC, the ALJ considered all symptoms to the extent they were reasonably consistent with the objective medical evidence and other evidence. (Tr. 18.)

3

Plaintiff argues that the ALJ did not account for all her credible limitations which were consistent with the opinions of her treating psychiatrist, Seekrant Kodela M.D. (Doc. 14.) Specifically, plaintiff argues the ALJ gave only partial weight to Dr. Kodela's opinions, accepting the opinion that plaintiff had moderate limitations but not marked limitations in her ability to maintain attention and concentration for extended periods of time. (Doc. 14 at 7-8.)  Plaintiff argues the ALJ omitted her decision the *moderate limitations* and failed to explain why they were omitted. (*Id*. at 8.)

Plaintiff argues this case is like *Trotter v. Colvin*, 2015 WL 5785548 (W.D. Mo. 2015). In that case the ALJ failed to give good reasons for discounting some portions of the treating physician's opinion concluding the claimant was unable to work full time without significant interruptions from psychological symptoms. *Trotter v. Colvin*, 2015 WL 5785548 at *4 (the ALJ needed to provide reasons for doing so which are consistent with the evidence of the record).

The ALJ discussed the reasoning for the weight given to the opinion evidence of Dr. Kodela in Section 5 of her opinion. (Tr. 20.)  The ALJ referenced Dr. Kodela's medical source statement dated March 2018, in which Dr. Kodela indicated plaintiff had only mild limitations in her ability to understand, remember and carry out short simple instructions and "moderate limitations in her ability to engage in complex tasks, sustain an ordinary routine, engage with the public, accept criticism from a supervisor, get along with co-workers and complete a normal workweek." (*Id*.) Doctor Kodela further opined the plaintiff had marked limitations in maintaining attention for an extended period of time. (*Id*.)  The ALJ found no evidence to support a finding that plaintiff had a marked limitation maintaining attention for an extended period of time. (*Id*.)  The ALJ pointed to evidence that plaintiff was able to attend her hearing without requesting breaks, and that she attended mental health counseling sessions without noted problems.  The ALJ further explained that she relied on the fact that, during plaintiff's psychiatric evaluation in February 2018, plaintiff admitted to being able to maintain her activities in daily living, having a boyfriend, socializing and taking care of her dogs. (*Id*.)  Further, the ALJ noted she found plaintiff's lack of treatment probative, because it demonstrated little in the way of mental functional limitations, concluding that the plaintiff may experience some limitations due to her mental and physical impairments but such was not incompatible with the performance of some work activity. (Tr. 20-21.)

Plaintiff argues the ALJ omitted a discussion of her *moderate limitations* without explanation.  The Court disagrees.  The moderate limitations were not omitted.  The ALJ stated

4

"the record supports a finding of moderate limitations interacting with others because of the claimant's social anxiety." (Tr. 20.)  The moderate limitation in interacting with others was supported by the medical record.  Accordingly, the ALJ found that plaintiff's ability to perform work at all levels was compromised by non-exertional limits, specifically; "she is limited to perform simple routine and repetitive tasks but not at a production rate pace (*e.g.* assembly work); [and] she is limited to simple work-related decisions; she can occasionally interact with supervisors and coworkers and never interact with the public." (Tr. 18.)  The limits provided by the ALJ recognize plaintiff's moderate limitations engaging in complex tasks, sustaining an ordinary routine, and completing a normal workweek because the ALJ limited plaintiff to "simple routine and repetitive tasks not at a production rate pace[,]" as well as, plaintiff's limits in engaging with the public, accepting criticism from a supervisor, and getting along with co-workers which the ALJ accounted for by limiting plaintiff to "occasionally interact with supervisors and coworkers and never interact with the public." (*Id.*)

      The ALJ relied on other substantial evidence in the record to support her conclusions. Regarding plaintiff's mental impairments, the ALJ considered that plaintiff engaged in intermittent treatment resulting in significant reduction of her symptoms. (Tr. 19.)  Pathways Community Health records indicate, in a progress note, that plaintiff's prescribed medications reduced her symptoms and that her crying totally subsided by June 2015.  At that time, she was able to sleep up to nine hours per night, go four-wheeling, and have a relationship with a new boyfriend. (*Id.*) By September 2015 plaintiff reported doing much better with Pristiq and was looking for part time jobs. (*Id.*)  Although plaintiff reported ongoing depression in 2016, her treating psychiatrist reported normal mental status examinations with normal concentration and memory. (*Id.*) In 2017, plaintiff and her treating psychiatrist reported noted improvement in symptoms with her medication regimen. (*Id.*)  In 2018, plaintiff reported "doing well" but she wanted to be able to communicate with people better, reporting continued social anxiety but less prevalent depression. (*Id.*) Moreover, after being prescribed Topomax for her migraine headaches, plaintiff admitted to significant improvement in the frequency of her headaches. (*Id.*)

      Accordingly, the ALJ's evaluation of plaintiff's condition and the determination of her RFC is supported by substantial evidence in the record as a whole and any further argument as to the omission of the moderate limitations in hypothetical questions posed to the vocational expert is moot.

B. Subjective Complaints

In considering the claimant's symptoms, the ALJ must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairments—i.e., an impairment that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. 404 § 1529; SSR 16-3p.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *Id*.

In the instant case, the ALJ found that the plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms. (Tr. 18.) However, the ALJ found the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*)

The evaluation of a claimant's subjective complaints "is not an examination of an individual's character." SSR 16-3p. Instead, the ALJ should consider all evidence in the record and address the applicable factors. 20 C.F.R. § 404.1529(c)(3). These factors include daily activities; the location, duration, frequency, and intensity of pain; the medication used to alleviate pain; any other treatment for pain; any other measures taken by the claimant to relieve pain; and failure to comply with treatment. (*Id.*)

In support of her argument plaintiff cites various treatment records documenting ongoing symptoms. To the extent plaintiff argues that the ALJ mischaracterized evidence when making a determination, a court must consider evidence that supports the ALJ's decision along with evidence that detracts from it. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). If, after review, the court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. *Id*. Inconsistencies with objective medical evidence is one of the factors the ALJ must consider when evaluating intensity, persistence, and limiting effect of an individual's symptoms. SSR 16-3p.

The Court will defer to the ALJ's decision as long as good reasons and substantial evidence support the evaluation of plaintiff's symptoms. *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) ("We will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."). Here, the ALJ gave good reasons for discounting plaintiff's subjective complaints. As an initial matter, as previously noted, objective medical evidence shows that routine and conservative management of plaintiff's conditions would not limit her activities to the debilitating degree alleged. With respect to her alleged mental impairments, the ALJ found plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because treatment has successfully reduced her symptoms. (Tr. 19-20.) For example, plaintiff indicated she was doing better with communicating and not having anxiety around people, her depression improved, and she attended her high school reunion, her sister's baby shower, a barbeque, and all her scheduled appointments without anxiety. (Tr. 723, 759, 771, 786, 788, 792, 790, 794.) Moreover, plaintiff reported she was "doing pretty well" (Tr. 835) and was independent in her activities of daily living (Tr. 867) which suggests her impairments were controlled with conservative treatment.

Further, the ALJ noted the record contains no evidence that the plaintiff is unable to work nor does it support debilitating symptoms as testified to by plaintiff at the hearing. (Tr. 19-20.) Despite her intellectual functioning challenges and special education classes, plaintiff attended college, studied childcare, and worked in childcare for sixteen years. (Tr. 266.) Additionally, plaintiff did not stop working in childcare due to her impairments; she testified she was fired because she had difficulty adjusting to her position at a non-state-qualified daycare. (Tr. 103.) *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (ruling it is a relevant factor that the claimant was laid off from work rather than being terminated due to an impairment).

Plaintiff's regular physical activities and hobbies demonstrate that she is able to perform the simple work the ALJ and vocational expert identified—*i.e.*, laundry laborer, linen room attendant, and packager of agricultural produce. For example, plaintiff and her mother testified that plaintiff was unable to go out alone or drive; yet the record indicates plaintiff was able to operate a four-wheeler on multiple occasions during the relevant period and she drove herself to her appointments alone. (Tr. 300. 324, 513. 534. 866.) Additionally, she took her dogs to the river, went to church and out to dinner, rode bikes with her boyfriend, made crafts, cross-stitched, took photographs, painted birdhouses, and did puzzles and word searches. (Tr. 602, 610, 689, 691, 718,

7

720, 777, 813-14, 866.)  The scope of these activities indicates plaintiff has a greater work capacity than she alleges and that she is at least capable of completing simple tasks, leaving home, and some interaction with others.

      The ALJ considered all evidence, gave good reasons for discounting inconsistencies, and provided substantial evidence to support her determinations regarding the limiting effects of plaintiff's mental impairments.  In light of the foregoing considerations and the record as a whole in this case, the Court finds that substantial evidence supports the ALJ's adverse treatment of plaintiff's subjective complaints.

## CONCLUSION

      For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.


                                                  /s/   David D. Noce  
                                   **UNITED STATES MAGISTRATE JUDGE**

Signed on September 22, 2020.